857 P.2d 626

AMERICAN CIVIL LIBERTIES UNION, IDAHO CHAPTER; Idaho for Human Dignity, Inc., an Idaho non-profit corporation; Brian J. Bergquist, an Idaho elector; Elizabeth Barker Brandt, an Idaho elector; and Mary–Evelyn Smith, an Idaho elector, Petitioners,

v.

Larry ECHOHAWK, Attorney General of the State of Idaho; and Pete Cenarrusa, Secretary of State of the State of Idaho, Respondents.

STOP SPECIAL RIGHTS COMMITTEE, Kelly A. Walton, an Idaho elector; Ellen J. Stark, an Idaho elector, Petitioners,

v.

Larry ECHOHAWK, Attorney General of the State of Idaho; and Pete Cenarrusa, Secretary of State of the State of Idaho, Respondents.

Nos. 20613, 20618.

Supreme Court of Idaho, Boise, June 1993 Term.

Aug. 3, 1993.

George C. Patterson, Boise, for petitioners.

Kelly Walton, Heyburn, for petitioner Stop Special Rights Committee.

Larry EchoHawk, Atty. Gen., and Francis P. Walker, Deputy Atty. Gen., Boise,

for respondents. Francis P. Walker argued.

McDEVITT, Chief Justice.

### BACKGROUND

The Idaho Citizens Alliance ("ICA") is spearheading an effort to obtain enough signatures to get an initiative regarding state law treatment of homosexuality on the ballot. The ICA submitted the proposed initiative to the Idaho Attorney General's Office, and the Attorney General, after conducting a non-binding legal review of the substance of the initiative, crafted short and long titles for the proposed initiative pursuant to I.C. § 34–1809. The petitioners, the Stop Special Rights Committee ("SSRC") and the American Civil Liberties Union ("ACLU"), petition this Court from those titles, claiming that the Attorney General did not provide proper titles.

### ANALYSIS

The Attorney General is directed, by I.C. § 34–1809, to draft short and long titles for initiatives. The relevant portion of I.C. § 34–1809 provides:

Said ballot title shall be used and printed on the covers of the petition when in circulation; the short title shall be printed in type not less than twenty (20) points on the covers of all such petitions circulated for signatures. The ballot title shall contain: (1) Distinctive short title in not exceeding twenty (20) words by which the measure is commonly referred to or spoken of and which shall be printed in the foot margin of each signature sheet of the petition. (2) A general title expressing in not more than two hundred (200) words the purpose of the measure. The ballot title shall be printed with the numbers of the measure on the official ballot. In making such ballot title the attorney general shall to the best of his [or her] ability give a true and impartial statement of the purpose of the measure and in such language that the ballot title shall not be intentionally an argument or likely to create prejudice either for or against the measure. Any person who is dissatisfied with the ballot title or the short title provided by the attorney general for any measure, may appeal from [the attorney general's] decision to the Supreme Court by petition, praying for a different title and setting forth the reason why the title prepared by the attorney general is insufficient or unfair.... Said Supreme Court shall thereupon examine said measure, hear argument, and in its decision thereon certify to the secretary of state a ballot title and a short title for the measure in accord with the intent of this section. The secretary of state shall print on the official ballot the title thus certified to him.

The Attorney General was directed to provide short and long titles for the following proposed law (the "ICA initiative"):

### PROPOSED TITLE 67, CHAPTER 80, IDAHO CODE

Section 67–8001: **PURPOSE OF ACT.** The provision[s] of Title 67, Chapter 80 of the Idaho Code are enacted by the people of the State of Idaho in recognition that homosexuality shall not form the basis for the granting of minority status. This chapter is promulgated in furtherance of the provisions of Article 3, Section 24 of the *Constitution of the State of Idaho.*

Section 67–8002: **SPECIAL RIGHTS FOR PERSONS WHO ENGAGE IN HOMOSEXUAL BEHAVIOR PROHIBITED.** No agency, department, or political subdivision of the State of Idaho shall enact or adopt any law, rule, policy, or agreement which has the purpose or effect of granting minority status to persons who engage in homosexual behavior, solely on the basis of such behavior; therefore, affirmative action, quota preferences, and special classifications such as "sexual orientation" or similar designations shall not be established on the basis of homosexuality. All private persons shall be guaranteed equal protection of the law in the full and free exercise of all rights enumerated and guaranteed by the U.S. Constitution, the Consti-

tution of the State of Idaho, and federal and state law. All existing civil rights protections based on race, color, religion, gender, age, or national origin are reaffirmed, and public services shall be available to all persons on an equal basis.

Section 67–8003: **EXTENSION OF LEGAL INSTITUTION OF MARRIAGE TO DOMESTIC PARTNERSHIPS BASED ON HOMOSEXUAL BEHAVIOR PROHIBITED.** Same-sex marriages and domestic partnerships are hereby declared to be against public policy and shall not be legally recognized in any manner by an agency, department, or political subdivision of the State of Idaho.

Section 67–8004: **PUBLIC SCHOOLS.** No employee, representative, or agent of any public elementary or secondary school shall, in connection with school activities, promote, sanction, or endorse homosexuality as a healthy, approved or acceptable behavior. Subject to the provisions of federal law, any discussion of homosexuality within such schools shall be age-appropriate as defined and authorized by the local school board of trustees. Counseling of public school students regarding such students' sexual identity shall conform in the foregoing.

Section 67–8005: **EXPENDITURE OF PUBLIC FUNDS.** No agency, department or political subdivision of the State of Idaho shall expend public funds in a manner that has the purpose or effect of promoting, making acceptable, or expressing approval of homosexuality. This section shall not prohibit government from providing positive guidance toward persons experiencing difficulty with sexual identity. This section shall not limit the availability in public libraries of books and materials written for adults which address homosexuality, provided access to such materials is limited to adults and meets local standards as established through the normal library review process.

Section 67–8006: **EMPLOYMENT FACTORS.** With regard to public employees, no agency, department or political subdivision of the State of Idaho shall forbid generally the consideration of private sexual behaviors as non-job factors, provided that compliance with the Title 67, Chapter 80, Idaho Code is maintained, and that such factors do not disrupt the work place.

Section 67–8007: **SEVERABILITY.** The PEOPLE INTEND, that if any part of this enactment be found unconstitutional, the remaining parts shall survive in full force and effect. This section shall be in all parts self-executing.

(Emphasis in original.)

The Attorney General provided the following short title and long title for the ICA initiative:

### SHORT TITLE

An act establishing state policies regarding homosexuality.

### LONG TITLE

Initiative relating to homosexuality and the state's authority to afford homosexuals minority status; enacting a new chapter, chap. 80, title 67, Idaho Code: providing that no state agency, department or political subdivision shall grant minority status to persons who engage in homosexual behavior; providing that same-sex marriages and domestic partnerships shall not be legally recognized; providing that elementary and secondary school educators shall not discuss homosexuality as acceptable behavior; providing that no state funds shall be expended in a manner that has the effect of accepting or approving homosexuality; limiting to adults access to library materials which address homosexuality; providing that private sexual practices may be considered non-job factors in public employment; and providing a severability clause.

The ACLU attacks the short title as being "insufficient" and "unfair." As to insufficiency, it contends that the short title is insufficient "because nowhere in the proposed initiative and nowhere in the Idaho Code is the term 'homosexuality' defined."

The ACLU cites definitions in Webster's Third New World Dictionary, points to the distinction between actual homosexual conduct and mere feelings, and generally argues that the term "homosexuality" is vague and over-inclusive. As to unfairness, the ACLU contends that the ICA initiative is unfair in that (1) it recites that it "establishes" a policy when Idaho already has a policy as set forth in Idaho Const. art. 1, § 1 ("All men are by nature free and equal...."), and (2) use of the term "homosexuality" could be confused with criminal activities, *i.e.*, Idaho's sodomy law, I.C. § 18–6605, when the ICA's initiative seeks to restrict civil rights.

The ACLU also attacks the long title as being "insufficient" and "unfair," and makes the following particular objection: the term "minority status" is not defined and is, therefore, vague and over-inclusive. Additionally, the Idaho Attorney General's Office, in its Certificate of Review states that Idaho law does not confer any special status on minorities. Furthermore, the term "homosexual behavior" is not defined, and it fails for the same reasons stated above under the discussion of the short title. It is not clear whether the term "same-sex" modifies "marriages" only or whether it also modifies "domestic partnerships." The initiative is not limited strictly to "educators." Instead, it applies to any "employee, representative, or agent" of a public elementary or secondary school. Further, the initiative does not apply only to grades one through twelve, it also applies to colleges because of the prohibition of spending "public funds in a manner that has the purpose or effect of promoting, making acceptable, or expressing approval of homosexuality...."

The SSRC concedes that the Attorney General's short title is proper. However, it argues that the first sentence of the long title could be understood to mean that the ICA initiative would grant special rights to minorities.

The Attorney General asserts that the purpose of ballot titles is not to analyze the legal content of the measure or address its merits or shortcomings, and that the statute does not grant the Attorney General the power or duty to correct problems in the initiative in writing the titles.

## A. *A History of I.C. § 34–1809.*

The Idaho State Legislature enacted I.C. § 34–1809 in 1933. Ch. 210, § 9, 1933 Idaho Session Laws 431, 437–38.

This Court was first asked to apply the provisions of I.C. § 34–1809 in *Girard v. Miller*, 55 Idaho 430, 43 P.2d 510 (1935). In *Girard*, the Idaho Secretary of State asked the Court to issue a writ of mandate to compel the Attorney General to provide a ballot title for a referendum petition. The Court, in a *per curiam* opinion, issued the writ, holding that the duty of the Attorney General to provide a ballot title under I.C. § 34–1809 is ministerial. *Girard*, 55 Idaho at 431, 43 P.2d at 510.

In 1954, this Court was also faced with the provisions of I.C. § 34–1809. However, this time, the substantive provisions regarding the content of ballot titles were squarely presented. In *In re Petition of Idaho State Fed'n of Labor*, 75 Idaho 367, 272 P.2d 707 (1954), the petitioner labor union appealed from the Attorney General's *short* title given to a "right to work" initiative. The union argued that the Attorney General's short title was defective "because it lacked reference to membership or lack of membership in a labor union or organization, with further elaboration thereof, as the *sine qua non* of the proposed measure." *Idaho State Fed'n of Labor*, 75 Idaho at 370, 272 P.2d at 708.

Preliminarily, we stated:

Under the statute, the Attorney General is to draft, within ten words exclusive of the designation, "Initiative Proposal For," a distinctive title by which the measure is commonly referred to or spoken of.... Thus, this short title ... must not only be a title by which the measure is *commonly* referred to or spoken of, but must also be *distinctive*.

*Idaho State Fed'n of Labor*, 75 Idaho at 372, 272 P.2d at 710 (emphasis added). After quoting dictionary definitions of "distinctive," we held:

This short title must, therefore, so far as possible within ten words, set forth the characteristics which distinguish this proposed measure and expeditiously and accurately acquaint the prospective signer with what he or she is sponsoring.

*Idaho State Fed'n of Labor*, 75 Idaho at 373, 272 P.2d at 710. In other words, the purpose of the short title requirements of I.C. § 34–1809, is "to acquaint prospective signers with the distinctive characteristics of the proposed measure...." *Idaho State Fed'n of Labor*, 75 Idaho at 375, 272 P.2d at 711.

Applying our analysis to the facts of the case, we held that the Attorney General's short title was not proper, when considered in light of the content, or thrust, of the proposed legislation:

The chief characteristic and paramount, distinctive features of the proposed statute are, that a person shall be allowed to seek, gain, obtain and retain employment regardless of whether or not he is a member of a labor union or labor organization.... Thus, tersely stated, this is an initiative measure for the right to work regardless of union membership or non-membership.

*Idaho State Fed'n of Labor*, 75 Idaho at 375, 272 P.2d at 711. We disapproved the Attorney General's short title, and we directed him to "prepare a title in accordance with the views expressed herein and file the same with the Secretary of State" within five days of the opinion becoming final. *Idaho State Fed'n of Labor*, 75 Idaho at 376, 272 P.2d at 712.

In 1979, the legislature amended I.C. § 34–1809 for the first time. Ch. 106, § 1, 1979 Idaho Session Laws 340, 340–41. The amendment provided for a review of initiative and referendum measures, the "certificate of review" by the Attorney General as a prerequisite to assignment of a ballot title.

Finally, I.C. § 34–1809 was amended most recently in 1988. Ch. 48, § 6, 1988 Idaho Session Laws 66, 70–72. The amendment deleted certain language and streamlined procedures. In particular, this amendment deleted (~~strikeout~~) and added

(underline) the following language from the statute:

The ballot title shall contain: (1) Distinctive short title in not exceeding ~~ten~~ twenty (~~1~~20) words by which the measure is commonly referred to or spoken of and which shall be printed in the foot margin of each signature sheet of the petition. (2) A general title ~~which may not be distinct from the legislative title of the measure~~ expressing in not more than ~~one~~ two hundred (~~1~~200) words the purpose of the measure.

**B.  *Application of I.C. § 34–1809 to the Attorney General's Short and Long Titles.***

**1.  *The Short Title.***

■ Under I.C. § 34–1809, the fundamental inquiry is whether the short title is "distinctive," that is, whether the short title "set[s] forth the characteristics which distinguish this proposed measure and expeditiously and accurately acquaint the prospective signer with what he or she is sponsoring." *Idaho State Fed'n of Labor*, 75 Idaho at 373, 272 P.2d at 710. Our examination of the ICA initiative discloses that its chief characteristic is that it would establish various state policies towards homosexuality. The policies include the prohibition of granting homosexuals "minority status," the prohibition of "same-sex marriages" and "domestic partnerships," restrictions against discussing homosexuality in the public schools, and restrictions against the expenditure of public funds for certain purposes relating to homosexuals. The Attorney General's short title is not argumentative or prejudicial, but instead is a true and impartial statement of the ICA initiative. We hold that the Attorney General's short title, "[a]n act establishing state policies regarding homosexuality," captures the distinctive characteristic of the ICA initiative using language by which it is commonly referred to as required by I.C. § 34–1809. We thus certify the short title, as written by the Attorney General, to the Secretary of State.

### 2. *The Long Title.*

Under I.C. § 34–1809, the long title is limited to 200 words and must express the "purpose of the measure." The Attorney General's long title begins with an explanation of the subject matter of the ICA initiative, "[i]nitiative relating to homosexuality and the state's authority to afford homosexuals minority status," and then goes through each section of the measure, summarizing the specific purpose of each section in the ICA initiative. Certainly, there may be other acceptable ways to write the title. However, it is not our judicial role to find another way or the best way, but to examine the Attorney General's language and ask whether it expresses the "purpose of the measure" without being argumentative or prejudicial. We hold that the Attorney General's long title does express the purpose of the ICA initiative without being argumentative or prejudicial. We thus certify the long title, as written by the Attorney General, to the Secretary of State.

### CONCLUSION

In accordance with the views expressed herein, we certify the Attorney General's short and long titles for the ICA initiative to the Secretary of State.

No costs or fees.

TROUT and SILAK, JJ., concur.

JOHNSON, Justice, concurring in the result.

I concur in the Court's certification of the short and long titles prepared by the attorney general. I write only to make sure that no one reads my concurrence in this result to be an implicit rejection of the substantive attacks on the proposed act. In my view, there are serious questions concerning the vagueness of some of the terms of the proposed act. If the initiative is successful, I will be prepared to address challenges to the act, without being limited by any suggested implications concerning the merits of these challenges that arise because of our decision in this case.

BISTLINE, J., concurs.