912 P.2d 634

### In the Matter of the WRIT OF PROHIBITION ENTITLED "BALLOT TITLE CHALLENGE ORAL ARGUMENT REQUESTED."

**Joanne BUCHIN and Elizabeth Barker Brandt, Petitioners,**

v.

**Alan G. LANCE, Attorney General of the State of Idaho, and Pete Cenarrusa, Secretary of State of the State of Idaho, Respondents.**

No. 22395.

Supreme Court of Idaho,
Boise, November, 1995 Term.

Dec. 22, 1995.

---

Kurt Holzer, Boise; Janet Crepps, Center for Reproductive Law, Denver, CO; Eve Gartner, Center for Reproductive Law, New York City (argued); and Roger Evans, New York City, for petitioners.

Alan G. Lance, Attorney General, Benito T. Ysursa, Deputy Attorney General, for respondents. William A. von Tagen argued for the Attorney General's Office. Robert L. Aldridge argued for the Idaho Citizen's Alliance.

McDEVITT, Chief Justice

This is an original proceeding for a writ of prohibition against the Attorney General's ballot title for an initiative filed by a group of Idaho citizens and the Idaho Citizen's Alliance (collectively referred to as the ICA). We find the Attorney General's titles to be insufficient.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

On June 26, 1995, the ICA filed a proposed initiative with the Secretary of State of the State of Idaho. On July 19, 1995, the Attorney General's Office for the State of Idaho (the Attorney General) issued a certificate of review, finding the initiative in conflict with federal constitutional standards. On August 7, 1995, the proponents of the initiative resubmitted an amended initiative to the Secretary of State. On August 14, 1995, the Attorney General issued the ballot title for the initiative, pursuant to I.C. § 34–1809.

The Petitioners seek a writ of prohibition preventing the Secretary of State from (1) approving for circulation any petitions containing the invalid titles, (2) accepting any signatures containing the invalid titles, and (3) utilizing the invalid titles in any publication, including voter's pamphlets or ballots. Petitioners also seek costs and attorney fees. The Attorney General argues that the short and long titles provide voters a non-prejudicial and non-argumentative statement of the actual language and purpose of the initiative. The chairman of the ICA, Kelly Walton, contends that the short and long titles assigned to the initiative fulfill the purpose defined in Idaho's election laws and maintains that the titles offer a true and impartial statement of the purpose of the initiative.

## II.

## ANALYSIS

The Attorney General was directed to provide short and long titles for the following proposed initiative (the initiative):

STATEMENT OF PUBLIC POLICY: By voting "YES" to this Initiative, the People of Idaho agree that Idaho has a legitimate and compelling interest in protecting the lives of prenatal girls and boys and find that procedures used in later term abortions cause suffering and pain in the unborn which is inhumane. We hereby declare that Chapter 6, Title 18, Idaho Code be amended, and the same is hereby amended by the addition thereto of NEW SECTIONS to be known and designated as Sections 18–616, 18–617, 18–618, 18–619, 18–620 and 18–621, Idaho Code, and to read as follows:

Section 18–616. WILLFUL DEATH OF A CHILD BEYOND A PRESCRIBED STAGE OF PRENATAL DEVELOPMENT PROHIBITED. Any willful intentional act for the purpose of causing the death of a living prenatal child who is beyond viability, as defined by federal law, shall be prohibited, except to prevent the death, or serious physical injury to the health of the prenatal child's mother.

Section 18–617. PROCEDURES COMMONLY PRACTICED TO CAUSE WILLFUL DEATH PROHIBITED FOR PRENATAL CHILDREN. The prohibition provided by this Chapter shall apply only after viability, including, but not limited to, the following abortion procedures: (a) dismemberment of the prenatal child's body; or, (b) chemically burning or poisoning the prenatal child; or, (c) the partial delivery of a prenatal child for the purpose of removing, by incision through the skull, followed by suction, the child's brain from his or her skull (dilation and extraction, otherwise known as brain suction abortion).

Section 18–618. DETERMINATION OF PRENATAL DEVELOPMENT PROVIDED. For purposes of the application of this legislation, a declaration of opinion by the attending physician shall be required

before performing any abortion procedures to determine in writing whether the life of the child falls beyond viability as defined by federal law.

Section 18–619. WOMAN NOT GUILTY. A woman upon whom any abortion is performed or attempted in violation of this chapter is not guilty of an attempt to commit, complicity in the commission of, or conspiracy in the commission of, a violation of this chapter.

Section 18–620. OBTAINING APPROPRIATE RELIEF. The mother, the father (and if the mother or father has not attained the age of 18 years at the time of the abortion, any parent of such minor), may in a civil action obtain appropriate relief. Such relief against the medical abortion provider who is in violation of this chapter may include, but is not limited to; monetary damages as allowed by law for all injuries, psychological and physical, occasioned by the violation of this chapter; and, in addition thereto, monetary damages equal to three times the cost of the injuries caused by that abortion; even if any party consented to the performance of that injury caused by that abortion.

Section 18–621. ENACTMENT AND SEVERABILITY. This act shall be in full force and effect immediately upon a majority of those voting on this Initiative having voted "YES" in the general election held on November 5, 1996. Should any section or portion thereof be found to be unconstitutional, all remaining provisions of the Act shall remain in full force and effect.

The Attorney General provided the following short title for the initiative:

"An initiative prohibiting abortions beyond the point of viability and providing exceptions."

The Attorney General provided the following long title for the initiative:

Initiative relating to late term abortions and amending title 18, chapter 6, Idaho Code: prohibiting any intentional act for the purpose of causing the death of a viable fetus, except to prevent the death of the pregnant woman or serious physical injury to her health; prohibiting abortion procedures when used to abort a viable fetus, except to prevent the death of the pregnant woman or serious physical injury to her health; requiring a written statement by the attending physician prior to any abortion procedure regarding whether the fetus is viable; providing that a pregnant woman upon whom an abortion is performed is not guilty of violating this chapter; providing for monetary damages against a medical abortion provider for violations of this chapter to the woman upon whom the abortion was performed and the man who impregnated her, or, if they were minors at the time of the abortion, their parents; and containing a severability clause.

The primary issue raised by the Petitioners' petition for a writ of prohibition, is whether the Attorney General's short and long titles satisfy I.C. § 34–1809. Idaho Code § 34–1809 requires the Attorney General to draft a ballot title containing a short title of no more than twenty (20) words and a long title of no more than two hundred (200) words. The short title must provide a "distinctive" statement by which the measure would be commonly referred to. I.C. § 34–1809. The long title must describe the purpose of the initiative. *Id.*

We have interpreted the substantive requirements of I.C. § 34–1809 in two prior decisions. In both of these decisions the initiative, that was the subject of the petition, constituted a separate and new body of law, which would not amend and/or add to existing statutory provisions. *In re Idaho State Fed'n of Labor,* 75 Idaho 367, 272 P.2d 707 (1954); *ACLU v. Echohawk,* 124 Idaho 147, 857 P.2d 626 (1993).

In *In re Idaho State Fed'n of Labor,* 75 Idaho 367, 272 P.2d 707 (1954), we considered the Attorney General's short title for a right to work initiative and held that I.C. § 34–1809 required a short title to provide a "distinctive" statement regarding a proposed initiative. *Id.* at 373, 272 P.2d at 710. In interpreting the "distinctive" language of I.C. § 34–1809, we held that the short title must set forth the characteristics which distinguish the initiative and accurately acquaint the voter with what he or she is

sponsoring. *Id.* at 373, 272 P.2d at 710. We recognized "distinctive" has been defined as: (1) referring primarily to that which marks or distinguishes one thing regarded in its relation to other things, (2) a mark or character indicating separation, (3) distinguishing from something diverse, or (4) serving or used to distinguish or discriminate. *Id.* at 373, 272 P.2d at 710 (citations omitted). In drafting the short title, the Attorney General must, by force of circumstances, analyze and appraise the initiative in order to determine what the initiative means and its distinctive characteristics. *Id.* at 374, 272 P.2d at 710–11. The short title is to be comprehensive in nature. *Id.* The Attorney General acts in a quasi judicial role when analyzing and determining the distinctive characteristics of an initiative. *Id.* The Attorney General's titles are subject to review by certiorari. *Id.*; I.C. § 7–202.

■ In *ACLU v. Echohawk,* 124 Idaho 147, 857 P.2d 626 (1993), we considered whether the Attorney General's ballot title for an initiative was consistent with the requirements of I.C. § 34–1809. In construing the Attorney General's short title, we began by determining the chief characteristics of the proposed initiative. *Id.* at 151, 857 P.2d at 630. We held that since the Attorney General's short title distinguished the initiative's chief characteristics, the short title was sufficient. *Id.* at 151, 857 P.2d at 630. As to the sufficiency of the long title, we held that the long title must express the purpose of an initiative. *Id.* at 152, 857 P.2d 631. We noted that it is not the Court's role to find another way or the best way to draft a long title, but rather to examine the Attorney General's language and ask whether it expresses the "purpose of the measure" without being argumentative or prejudicial. *Id.*

## A. THE SHORT TITLE IS INSUFFICIENT BASED ON THE FACT THAT IT DOES NOT DISTINGUISH THE INITIATIVE FROM IDAHO'S EXISTING ABORTION LAWS.

■ The initiative proposes to add six new sections to Idaho's criminal code for abortions and contraceptives. Currently, Idaho statutorily prohibits abortion through two provisions which impose criminal consequences against any person (including a pregnant woman) who intentionally causes an abortion. I.C. §§ 18–605, –606. Both I.C. §§ 18–605 and 18–606 are prefaced with clauses that except from the scope of their prohibition those abortions expressly permitted by the act. I.C. §§ 18–605, –606. The "act" includes I.C. §§ 18–604 through 18–615. Since the Court has never interpreted the substantive requirements of I.C. § 34–1809, in the context of an initiative to amend or add to existing statutory law, the Petitioners raise an issue of first impression.

Idaho Code § 18–608 sets forth the abortions which are expressly permitted by the act, by dividing the human gestation period into three trimesters. Idaho Code § 18–604(6) defines the "third trimester of pregnancy" as "that portion of a pregnancy from and after the point in time when the fetus becomes viable." I.C. § 18–604(6). The initiative at issue in this case relates to pregnancies which are "beyond viability, as defined by federal law." Both the "third trimester of pregnancy" language of I.C. § 18–608 and the "beyond viability" language of section 18–616 of the initiative, appear to describe the same point in time.

Abortions which are performed in a hospital, pursuant to the judgment of physicians that the abortion is (1) necessary for the preservation of the life of a woman, or (2) necessary because if not performed, such pregnancy would terminate in birth or delivery of a fetus unable to survive, are permitted in the third trimester of pregnancy. I.C. § 18–608(3). If an abortion is performed during the third trimester to preserve the life of a woman, such abortion must, consistent with medical practice and the well-being and safety of a woman, be performed in a manner consistent with preservation of any reasonable potential for survival of a viable fetus. I.C. § 18–608(3).

Section 18–616 of the initiative has been proposed as a new section to Chapter 6, title 18 of Idaho's criminal code (hereafter referred to as the chapter). Section 18–616 prohibits post-viability abortions, but does not refer to the criminal penalties set forth in I.C. §§ 18–605 and 18–606. Unlike I.C.

§§ 18–605 and 18–606, section 18–616 does not except from its prohibition those abortions which are expressly allowed by the chapter. Section 18–616 specifically names the two exceptions to its ban on post-viability abortions: (1) allow abortions to prevent the death of a woman, and (2) allow abortions to prevent serious physical injury to the health of a woman.

The initiative would affirm the provisions of I.C. § 18–608 which allow for an abortion when a woman's life has been threatened, but would conflict with I.C. § 18–608 by prohibiting a woman from continuing to have an abortion in the event her pregnancy would not produce a living fetus. Section 18–616 would also add a new exception to Idaho's abortion prohibition, allowing abortions beyond viability, in order to prevent serious physical injury to the health of a woman.

Section 18–620 of the initiative would add a new civil cause of action for the mother, father, or if a minor, their parents, against apparently anyone who violated the chapter. Section 18–620 would also provide a new civil cause of action, with treble damages, against a medical abortion provider who violated the chapter, regardless of whether any party consented.

Sections 18–616 and 18–617 of the initiative, in combination with I.C. §§ 18–605 and 18–606, would subject any violators of the chapter (except the mother) to criminal liability. Section 18–619 of the initiative would directly conflict with I.C. § 18–606(2), which imposes criminal penalties against any woman who knowingly submits or solicits another to conduct abortion procedures, unless such abortion was permitted by the act. In contrast, section 18–619 of the initiative, would relieve any woman, upon whom an abortion was performed in violation of the chapter, from criminal liability for attempting to commit, complicity in the commission of, or conspiring in the commission of, a violation of the chapter.

The Petitioners argue the Attorney General has a duty, under I.C. § 34–1809, to include in the short title the fact that the initiative would delete and add exceptions to Idaho's existing ban on post-viability abortions. The Petitioners contend that the short title must set forth what distinguishes the initiative from Idaho's current law. The Petitioners rely on the Court's holding in *In re Idaho State Fed'n of Labor*, 75 Idaho 367, 272 P.2d 707 (1954), to support their assertion that the short title must set forth what distinguishes or separates the initiative from Idaho's current abortion law. *Id.* at 373, 272 P.2d at 710.

There are three chief characteristics of the initiative at issue: (1) The initiative would delete and add exceptions to Idaho's existing prohibition on post-viability abortions, (2) the initiative would delete and add criminal penalties, and (3) the initiative would add new civil actions against violators of the chapter. The exception that would be deleted by the initiative would be I.C. § 18–608(3)'s post-viability abortion exception for situations where the pregnancy would not produce a living fetus. Section 18–616 would add an exception to Idaho's ban on post-viability abortions for preventing serious physical injury to a woman. Current Idaho statutes do not recognize "serious physical injury" to a woman as an exception to the ban against post-viability abortions. Section 18–616 and 18–617 would add new criminal liability for violations of the Chapter. Section 18–620 of the initiative would also add new civil actions and section 18–619 would remove criminal penalties for pregnant women who violated the chapter.

The Attorney General's short title fails to capture the distinctive characteristics of the initiative. The short title, "[a]n initiative prohibiting abortions beyond the point of viability and providing exceptions," inaccurately informs voters that the purpose of the initiative is to create a law prohibiting post-viability abortions, with exceptions. Yet, the initiative would not create a new law prohibiting post-viability abortions, but rather would delete an exception to the existing ban on post-viability abortions, add a new exception to the ban, create new civil causes of action, create new criminal liabilities, and repeal existing criminal penalties against pregnant women who violate the chapter.

In the case *In re Idaho State Fed'n of Labor*, 75 Idaho 367, 272 P.2d 707 (1954), the

Court held that a short title must provide a "distinctive" statement regarding a proposed initiative. A "distinctive" short title would set forth the characteristics which would distinguish the initiative and accurately acquaint the voter with what he or she is sponsoring. *Id.* at 373, 272 P.2d at 710. The Court has defined "distinctive" as a statement that would refer to that which would distinguish one thing as it related to other things. *Id.* at 373, 272 P.2d at 710. Given the initiative's statement of policy acknowledges the purpose of the initiative is to *amend* and *add* to an existing body of law, the short title should distinguish between the aspects of proposed initiative in relation to current abortion laws. By force of circumstances, the Attorney General must analyze and appraise the initiative, in a quasi judicial manner, and provide voters with a short title that explains the initiative's departure from existing abortion laws. *Id.* at 374, 272 P.2d at 710–11. In the present case, the Attorney General's short title is not the product of an analysis of the initiative that distinguishes the initiative from Idaho's existing abortion laws. Consequently, the Attorney General's short title is not sufficient and should be redrafted in accordance with the views expressed herein.

## B. THE LONG TITLE IS INSUFFI-CIENT BASED ON ITS FAILURE TO PROVIDE VOTERS WITH AN AC-CURATE DESCRIPTION OF THE PURPOSE OF THE INITIATIVE.

■ The Attorney General's long title provides a brief summary for each of the six proposed sections of the initiative. The fourth phrase of the long title describes section 18–619 of the initiative as, "providing that a pregnant woman upon whom an abortion is performed is not guilty of violating this chapter." Section 18–619's summary would not inform voters that the purpose of section 18–619 would be to repeal existing law (I.C. § 18–606) which imposes criminal penalties against pregnant women who violate the chapter.

The fifth phrase of the long title describes section 18–620 of the initiative as, "providing for monetary damages against a medical abortion provider for violations of this chap-

ter to the woman upon whom the abortion was performed and the man who impregnated her, or, if they were minors at the time of the abortion, their parents." This phrase is the focus of the Petitioners' challenge to the Attorney General's long title. The Petitioners argue that the long title is not sufficient because it fails to inform voters that section 18–620 of the initiative, creates a new civil cause of action in which apparently any person who violates the chapter can be sued for "appropriate relief." The Petitioners correctly recognize that section 18–620 is silent as to any limitation on who may be civilly liable to the mother or father, or if a minor, their parents. The long title states that monetary damages against the medical abortion provider, who is in violation of the chapter may be recovered. Petitioners claim that the problem with this part of the Attorney General's long title is that it leads voters to the incorrect conclusion that section 18–620 creates a civil cause of action against only "medical abortion providers." The Petitioners further object to the long title's failure to mention that medical abortion provider's civil liability remains independent from any party's consent to the abortion procedure and that monetary damages against the medical abortion provider are subject to trebling. Finally, the Petitioners maintain that there is no indication from the long title that, although not criminally liable under the initiative, a pregnant woman, in violation of the chapter, could be subject to civil liability for damages and/or injunctive relief.

Idaho Code § 34–1809 requires a ballot title to be a true and impartial statement that describes the purpose of the initiative. I.C. § 34–1809. The Attorney General's long title summary of Section 18–620 fails to inform voters that the purpose of section 18–620 would be to create a new civil cause of action in which *any* person who violated the chapter could potentially be sued for "appropriate relief." The long title further fails to accurately inform the voters that one of the purposes of section 18–620 would be to provide civil relief against the medical abortion provider, with treble damages, despite the fact that any party consented to the injuries caused by the abortion. The Attorney General's long title likewise does not inform vot-

ers of the effect of section 18–616 or the penalties and exceptions created therein.

The Attorney General's long title fails to provide voters with an accurate description of the purposes of sections 18–616, 18–619, and 18–620 of the initiative. Consequently, the Attorney General's long title is not sufficient and should be redrafted in accordance with the views expressed herein.

## C. I.C. § 34–1809 REQUIRES THE ATTORNEY GENERAL TO DISTINGUISH AND INTERPRET THE INITIATIVE IN DRAFTING THE BALLOT TITLE.

 The Attorney General is not an independent observer, but rather bears the burden of analyzing and appraising the initiative and providing voters with a short title that illustrates the initiative's distinctive characteristics. *In re Idaho State Fed'n of Labor,* 75 Idaho at 374, 272 P.2d at 710–11. The Attorney General's short title must describe how the initiative is distinguishable from existing law the initiative is amending or repealing.

In the interests of facilitating a decision in this matter, the Court will expedite the decision process by providing the following short and long titles which the Court would deem acceptable as short and long titles for the initiative.

### SHORT TITLE

Initiative amending existing law regarding third trimester abortions; creating civil and criminal liability for violations; deleting certain existing criminal penalties.

### LONG TITLE

Initiative concerning title 18, Chapter 6, Idaho Code: Existing law prohibits abortion in the third trimester of pregnancy, except to prevent the pregnant woman's death or when pregnancy would terminate in birth or delivery of a fetus unable to survive. The initiative would prohibit any intentional act to cause the death of a viable fetus, except to prevent the pregnant woman's death, add an exception to prevent serious physical injury to the pregnant woman's health, and delete the exception for birth or delivery of a fetus unable to survive. The initiative would prohibit certain post-viability abortion procedures, except to prevent serious physical injury or death to the pregnant woman; require a written statement by the physician regarding fetus viability before any abortion procedure; create new criminal liability; delete existing criminal liability of a pregnant woman violating the chapter; create a civil action for damages and/or injunctive relief for the mother, father, or if either were minors at the time of the abortion, their parents, against any person for violating the chapter; and create a civil action for triple damages against the medical abortion provider regardless of whether anyone consented to the abortion. The initiative contains a severability clause.

## D. THE SIGNATURES COLLECTED ON THE PETITIONS WITH THE INVALID TITLES ARE INVALID.

 The Petitioners argue that the signatures the proponents have gathered in support of the initiative, affixed to petitions with invalid titles, should be deemed invalid. We agree. We have found in this opinion that the Attorney General's short and long titles do not meet the demands of I.C. § 34–1809 and existing case law. Consequently, any signature collected by the circulation of a petition with these invalid titles cannot be valid.

## E. THE PETITIONERS ARE NOT ENTITLED TO ATTORNEY FEES.

 The Petitioners requested attorney fees in their petition challenging the Attorney General's ballot titles, without stating the grounds for their request. In *Langley v. State,* 126 Idaho 781, 890 P.2d 732 (1995), we held that issues that were raised on appeal, but not supported by propositions of law, authority, or argument, would not be considered by the Court. *Id.* at 784, 890 P.2d at 735. Therefore, we deny the Petitioners' request for attorney fees on the ground that the Petitioners failed to provide any legal authority or argument in support of their request.

## III.

## CONCLUSION

The Attorney General's short and long titles are insufficient. The signatures collected on the petitions with the defective titles are invalid. The Petitioners' request for attorney fees is denied.

JOHNSON, TROUT, SILAK and SCHROEDER, JJ., concur.